IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION
_____

RONALD BALDRIDGE,

    Plaintiff,

                                      No. 16-2293-JDT-dkv

vs.

INDEPENDENT APARTMENTS,

    Defendants.
_____

RONALD BALDRIDGE,

    Plaintiff,

                                      No. 16-2294-JDT-dkv

vs.

TESCO PROPERTIES,

    Defendants.
_____

REPORT AND RECOMMENDATION FOR *SUA SPONTE* DISMISSAL
_____

On April 28, 2016, the plaintiff, Ronald Baldridge ("Baldridge"), filed two *pro se* complaints, one against Independent Apartments, (Compl., Baldridge v. Independent Apartments, Case No. 2:16-cv-2293-JDT-dkv, ECF No. 1), and the second against Tesco Properties ("Tesco"), (Compl., Baldridge v. Tesco Properties, Case No. 2:16-cv-2294-JDT-dkv, ECF No. 1), (collectively "the Defendants"), alleging violation of his civil rights under 42 U.S.C. § 1983. Accompanying each complaint was a motion seeking leave to proceed *in forma pauperis* which the court granted on May 2, 2016.

This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.) Because Baldridge's allegations against each defendant are identical, the court will issue one Report and Recommendation. For the reasons that follow, it is recommended that Baldridge's claims against Independent Apartments and Tesco be dismissed for failure to state a claim.

I. PROPOSED FINDINGS OF FACT

Baldridge filed both complaints on a court-supplied form styled "Complaint for Violation of Civil Rights Under 42 U.S.C. § 1983." (*See* Compl., Baldridge v. Independent Apartments, Case No. 2:16-cv-2293-JDT-dkv, ECF No. 1 & Compl., Baldridge v. Tesco Properties, Case No. 2:16-cv-2294-JDT-dkv, ECF No. 1.) In the Statement of Claim section of the complaint against Independent Apartments, Baldridge states:

> I complained to apartment [] manager of bed bug infestation in May 1, 2015. Nothing happened I called the news for help and then they Independent Apartments try to evict me as a way of getting back at me for calling news and President Obama office [sic]. Doctor and hospitalized, forced to pay double rent, I had to throw away all furniture, clothes, I was biten [sic] up badly from bed bug which caused bedsores on my feet, back, head, leg. Tiffany White harassed me by phone calls threats about her telling me she would evict me the last of August she brought the police over to intimidate me and other residents by saying she got soldiers reffering [sic] to her police friends she use to enforce her rules or manipulations, threats she used at Pepper Tree Apartments. Threats what she could do to me. Bad reference.

2

(Compl. ¶ IV, Baldridge v. Independent Apartments, Case No. 2:16-cv-2293-JDT-dkv, ECF No. 1.) In the Statement of Claim section of the complaint against Tesco, Baldridge states:

> Owner of Property that receives Federal Funding from the Government to make proper maintenance on and inside the property for people with disabilities in wheelchairs handicap. May 26, 2015 after my brother died from lung cancer I was biten [sic] badly by bed bugs in this apartment that the manager of their property leased apartment to a woman who picked up clothes and washed them and dryed [sic] them in two washer and dryers for by resident caused me to be hospitalized. Furniture was thrown out, clothes, and other property. I was biten [sick] badly on my head stomach back and feet where I can't feel. I contact them on the phone but got no contact from them. I end up paying for products to kill the bed bugs . . . from Amazon.com.
> . . . .

(Compl. ¶ IV, Baldridge v. Tesco Properties, Case No. 2:16-cv-2294-JDT-dkv, ECF No. 1.) Baldridge has attached the following documents to both of the complaints:

1. A collection of emails and letters sent by Baldridge to various individuals entitled "Correspondence";

2. Various pictures of his injuries by bed bug bites;

3. A Detainer Warrant filed in the General Sessions Court of Shelby County, Tennessee summoning Baldridge to appear at a hearing on August 4, 2015;

4. A document containing copies of MoneyGram rent payments to Independent Apartments;

5. A document entitled "Medical Summary" containing records from Regional One Health;[1]

---

[1] In the complaint against Independent Bank, Baldridge has also attached a notice for the funeral of Darryl Baldridge. (Notice of Funeral, Baldridge v. Independent Apartments, Case No. 2:16-cv-2293-JDT-dkv, ECF No. 1-5.)

3

In the attachment entitled "Correspondence," Baldridge states that he "want[s] to file harassment and retaliation claim against [Tesco] because they are saying [he] didn't pay June rent" even though he did in fact pay it. (Correspondence 2, Baldridge v. Independent Apartments, Case No. 2:16-cv-2293-JDT-dkv, ECF No. 1-1; Correspondence 1, Baldridge v. Tesco Properties, Case No. 2:16-cv-2294-JDT-dkv, ECF No. 1-1.) He further states that he was turned down for a new apartment possibly because of a bad reference from Tesco and Independent Apartments. (Correspondence 1, Baldridge v. Independent Apartments, Case No. 2:16-cv-2293-JDT-dkv, ECF No. 1-1; Correspondence 2, Baldridge v. Tesco Properties, Case No. 2:16-cv-2294-JDT-dkv, ECF No. 1-1.) In a letter to Tesco and Independent Apartments, Baldridge complains about the safety of the apartments noting that a "great deal of robberies [] ha[d] taken place on th[e] property" recently. (Correspondence 5, 8, Baldridge v. Tesco Properties, Case No. 2:16-cv-2294-JDT-dkv, ECF No. 1-1.) In another letter to Tesco and Independent Apartments dated May 1, 2015, Baldridge notifies them that he was bitten by bed bugs coming through the vents. (*Id.* at 9.) Baldridge has attached to the complaint various pictures of his injuries as well as medical records of the treatment he received at Regional One Health.

In both complaints, Baldridge requests that the Defendants clean and repair the apartment complex, compensate him for his medical bills, pain and suffering, and supplies he bought to clean

4

his apartment. Baldridge also requests compensation from the Defendants for trying to evict him and for harassing him. Baldridge requests punitive damages from both Defendants, 2 million dollars from Independent Apartments, and 2.5 million from Tesco. (Compl. ¶ V, Baldridge v. Independent Apartments, Case No. 2:16-cv-2293-JDT-dkv, ECF No. 1; Compl. ¶ V, Baldridge v. Tesco Properties, Case No. 2:16-cv-2294-JDT-dkv, ECF No. 1.)

II. PROPOSED CONCLUSIONS OF LAW

A. 28 U.S.C. § 1915(e)(2) Screening

Pursuant to Local Rule 4.1(a), service will not issue in a *pro se* case where the *pro se* plaintiff has been granted leave to proceed *in forma pauperis* until the complaint has been screened under 28 U.S.C. § 1915(e)(2). The clerk is authorized to issue summonses to *pro se* litigants only after that review is complete and an order of the court issues.

This report and recommendation will constitute the court's screening of both complaints filed by Baldridge. The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action —

(i)     is frivolous or malicious;

(ii)    fails to state a claim on which relief may be granted; or

(iii)   seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

5

B.   Standard of Review for Failure to State a Claim

In assessing whether Baldridge's complaints state a claim on which relief may be granted, the court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  "A complaint must "'contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009)(quoting *Iqbal*, 556 U.S. at 678).  The court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief.  *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012).  However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").  The Supreme Court's decision in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002), makes clear that Title VII plaintiffs are not

required to plead the elements of a prima facie case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). All that is required is that the complaint comply with "Rule 8(a)'s simplified pleading standard." *Swierkiewicz,* 534 U.S. at 513.

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading.")(internal quotation marks omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004)("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who

7

come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

C. Baldridge's § 1983 Claims against the Defendants

Baldridge filed both complaints on a court-supplied form styled "Complaint for Violation of Civil Rights Under 42 U.S.C. § 1983." "To establish a claim under § 1983, a plaintiff must show that he was deprived of rights guaranteed under the United States Constitution or federal law by a person acting 'under color of state law.'" *Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 429 (6th Cir. 2016)(quoting *Strickland on Behalf of Strickland v. Shalala*, 123 F.3d 863, 866 (6th Cir. 1997)). Thus, to state a claim under 42 U.S.C. § 1983, Baldridge must allege two elements: (1) first, that the Defendants acted under color of state law, and (2) a deprivation of rights secured by the United States Constitution or federal statutory law. *Fritz v. Charter Twp. of Cornstock*, 592 F.3d 718, 722 (6th Cir. 2010). In the two cases before the court, Baldridge purports to bring constitutional claims against Independent Apartments, the owner of his apartment complex, and Tesco, the company who manages Independent Apartments.[2] However, Baldridge does not state in what manner Tesco and Independent Apartments were acting under color of state law and how these Defendants' actions violate the U.S.

---

[2] In the body of the complaint against Independent Apartments, Baldridge also lists Tiffany White, the apartment manager, as an additional defendant. The same analysis of Baldridge's claims against Independent Apartments applies to Baldridge's purported claims against White, and for the reasons stated herein Baldridge also fails to state a claim against White.

8

Constitution or federal law.

As to the first element, Baldridge alleges that Independent Apartments receives federal funding from the government. However, merely receiving federal funding does not make the Defendants state actors. By way of background, in 1974, Congress amended the United States Housing Act of 1937 ("USHA") to create what is known as the Section 8 Housing Program. *Gladney v. Sureluck Homes LLC*, No. 1:13-CV-462, 2013 WL 2182797, at *2 (W.D. Mich. May 20, 2013)(citing 42 U.S.C. § 1437f, *et seq.*). Section 8 was created for the purpose of "aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing." *Id.* (quoting 42 U.S.C. § 1437f(a)). "Section 8 provides federally subsidized housing to millions of low-income families and individuals through a range of rental assistance programs, both tenant—and project-based." *Id.*[3] "Under all types of Section 8 programs, tenants make rental payments based upon their income and ability to pay, and [the Department of Housing and Urban Development ("HUD")] then provides, under various delivery mechanisms, 'assistance payments' to private landlords to make up the difference between the

---

[3] Under the tenant-based program, the public housing authority issues an eligible family a voucher and the family selects a unit of its choice. Under the project-based program, a public housing authority enters into an assistance contract with the owner for specific units and for a specified term and refers families from to waiting list to the project owner to fill vacancies. *See* HUD.GOV, Project Based Vouchers, https://portal.hud.gov/hudportal/documents/huddoc?id=DOC_9157.pdf.

tenant's contribution and the agreed-upon 'contract rent.'" *Id.* (citations omitted). Section 8 programs are administered by State or local governments called public housing agencies, such as the Memphis Housing Authority. *Id.* at *3; Cuyahoga Metro. Auth. v. K & D Grp., Inc.*, 618 F. App'x 842, 844 (6th Cir. 2015)(citations omitted)(quoting 24 C.F.R. § 982.1(a)).[4]

It appears from the allegations in the complaint that Independent Apartments, managed by Tesco, participates in the Section 8 program[5] and receives funds administered by the Memphis Housing Authority for renting to low-income individuals.[6] Independent Apartments and Tesco are not engaged in state action merely because they receive financial assistance from Memphis Housing Authority. The Supreme Court has held that private parties are not engaged in state action even if they receive substantial governmental assistance. *Rendell-Baker v. Kohn*, 457 U.S. 830, 840-41 (1982)(holding that there was no state action even though

---

[4] The Memphis Housing Authority is created pursuant to Tenn. Code Ann. § 29-20-401, *et seq*. Tenn. Op. Att'y Gen. No. 00-150, 2000 WL 1597410, at *1 (Oct. 27, 2000). The Memphis Housing Authority is an "agency or instrumentality of the city" and is considered a local government agency. *Id.* at * 2 (quoting *Knoxville Housing Authority, Inc. v. City of Knoxville*, 123 S.W.2d 1085, 1088 (Tenn. 1939)).

[5] It is unclear from the complaint whether Independent Apartments participates in the tenant-based program or the project-based program.

[6] *See also* Memphis Housing Authority, Housing Choice Voucher, http://www.memphisha.org/index.php/departments/housing-choice-voucher.

private educational institution received almost all of its funding from the state); *Blum v. Yaretsky*, 457 U.S. 991 (1982)(refusing to hold New York state responsible for nursing home's patient transfer decisions, even though the state subsidized operating costs and paid medical expenses of more than 90% of patients); *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 784 (6th Cir. 2007)(holding that there was no state action even though the government offered tax incentives to the defendant); *Wolotsky v. Huhn*, 960 F.2d 1331, 1336 (6th Cir. 1992)(finding private not-for-profit corporation which derived "a significant portion of its funding from the government" and which leased one of its facilities from the government at nominal cost was not a state actor); *Adams v. Vandemark*, 855 F.2d 312, 316 (6th Cir. 1988)(holding that the defendant, a non-profit corporation, was not a state actor even though it was "funded almost entirely by public sources, and [was] subject to regulation"). Apart from stating that Independent Apartments receives funding from the government, Baldridge does not state in what other manner Independent Apartments or Tesco were acting under color of state law.

As to the second element of the § 1983 claims, Baldridge does not state how the Defendants' actions violate the U.S. Constitution or federal law. The crux of Baldridge's allegations is that his apartment complex is unsafe and unsanitary. USHA requires that Memphis Housing Authority "maintain its public housing in a condition that complies with certain housing quality standards that ensure that

the public housing is 'safe and habitable.'" *Johnson v. City of Detroit*, 446 F.3d 614, 626 (6th Cir. 2006)(quoting 42 U.S.C. § 1437d(f)(2)).[7] HUD places housing quality standards for public agencies to follow in both tenant-based and project-based housing. *See* 24 C.F.R. § 982.401(establishing housing quality standards for the tenant-based assistance program) & 24 C.F.R. § 983.101(stating that housing quality standards apply to the project-based program). However, the Sixth Circuit held in *Johnson* that USHA does not create rights enforceable by individual tenants. *Johnson*, 446 F.3d at 627. The Sixth Circuit in *Johnson* affirmed the district court's opinion which stated in relevant part:

> Nothing in [USHA] establishes a clear and unambiguous intent by Congress to create privately enforceable rights under § 1983 to ensure compliance with housing quality standards. The statutory provisions cited by Plaintiff focus on the Secretary of HUD's responsibilities and govern when assistance payments may be made to a public housing agency such as the DHC. The statute confers the authority on HUD to issue housing quality standards for public housing agencies to follow, but it does not contain language which unambiguously creates rights in Section 8 tenants.
>
> Plaintiff essentially argues that the statutory language creates a federal right for Section 8 tenants in "safe and habitable" housing as reflected in the housing quality standards implemented for public housing agencies to follow. The residents of public housing undoubtedly benefit from the statutory provisions which condition the receipt of federal funds on the requirements to follow the

---

[7]*See also* Memphis Housing Authority, Housing Choice Voucher, http://www.memphisha.org/index.php/departments/housing-choice-voucher (stating that when a family finds a unit, Memphis Housing Authority will inspect that unit to ensure that it meets HUD's Housing Quality Standards).

12

> housing quality standards. However, the statute focuses on regulating the Secretary and the public housing agencies through the Secretary's promulgation of housing quality standards. In other words, public housing authorities could make assistance payments only to the property owners who maintained housing units in accordance with the housing quality standards for decent and safe housing. This focus on the entity being regulated cuts against any intent to create rights enforceable by individual tenants.

*Id.* at 626-27. Therefore, Section 8 of USHA does not confer new federal rights under § 1983 for safe and habitable housing. This conclusion is also supported by federal regulations which state that the tenant is not a third-party beneficiary to the contract between the public housing authority and the owner and "may not exercise any right or remedy against the owner under [that] contract." 24 C.F.R. § 982.456. Thus, to the extent Baldridge bases his § 1983 claim on violations of USHA's Section 8 provisions, such claim must be dismissed for failure to state a claim upon which relief can be granted. *See also Lewis v. Wheatley*, 528 F. App'x 466, 468 (6th Cir. 2013)(holding that USHA did not grant a private right of action to individuals suing over poor quality of their Section 8 housing); *Banks v. Dallas Hous. Auth.,* 271 F.3d 605, 611 (5th Cir. 2001)(finding no private right of action to enforce § 1437f(e) of USHA); *Edwards v. Dist. of Columbia,* 821 F.2d 651, 659-60 (D.C. Cir. 1987)(finding no private right of action to enforce § 1427p of USHA); *Brown v. Hous. Auth. of McRae,* 784 F.2d 1533, 1536-38 (11th Cir. 1986)(holding that tenants had no implied private right of action against city housing

authority, its executive director and board of commissioners to enforce § 1437); *Perry v. Housing Authority,* 664 F.2d 1210, 1217 (4th Cir. 1981)(holding that USHA did not create any legally cognizable rights in the tenants to correct allegedly unsafe and unsanitary housing conditions); *Harris v. BlueRay Tech. Shareholders, Inc.* No. CV-07-342, 2010 WL 1254698, at *3 (E.D. Wash. Mar. 25, 2010)(holding that there was no private right of action against landlord for eviction in violation of Section 8 notice requirements); *Modica v. Reyna,* No. 1:08-CV-871, 2009 WL 2827975, at *9 (E.D. Tex. Sept. 2, 2009)(holding that there was no implied private right of action to sue under Section 8); *Green v. Konover Residential Corp.,* No. 3:95CV1984, 1997 WL 736528 (D. Conn., Nov. 24, 1997)(same); *Rodgers v. Garland Hous. Agency,* No. Civ. 3:01-CV-0477-H, 2001 WL 1029516, at *3 (N.D. Tex. Aug. 21, 2001) ("[N]umerous decisions support the conclusion that the United States Housing Act of 1937 does not permit an implied private right of action under Section 8 programs").

Baldridge also alleges that he was wrongfully evicted even though he had paid his rent. (Correspondence 2, Baldridge v. Independent Apartments, Case No. 2:16-cv-2293-JDT-dkv, ECF No. 1-1; Correspondence 1, Baldridge v. Tesco Properties, Case No. 2:16-cv-2294-JDT-dkv, ECF No. 1-1.) Section 8 of USHA does not "create a federal claim for allegedly wrongful eviction." *Gladney*, 2013 WL 2182797, at *3. "The mere fact that part of [Baldridge's] rent was paid under the federally funded Housing Choice Voucher

14

Program does not displace state law, which generally governs the relationship between landlord and tenant, nor does it create a federal claim for allegedly wrongful eviction." *Id.* at *4. Baldridge's wrongful eviction claim arises under state law and must be litigated in the state courts. *Id.*

Lastly, Baldridge alleges in one sentence that the Defendants failed to "make proper maintenance on and inside the property for people with disabilities." (Compl. ¶ IV, Baldridge v. Tesco Properties, Case No. 2:16-cv-2294-JDT-dkv, ECF No. 1.) The Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*, prohibits discrimination in renting or selling "because of race, color, religion, familial status, or national origin," or because of a person's handicap. *Id.* § 3604(a)—(e), (f). Section 3604(f) states that discrimination includes refusal to permit or make reasonable accommodations necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling. *Id.* § 3604(f)(3). The Fair Housing Act does not cover the landlord's failure to properly maintain the premises; the Act's terms are restricted to discrimination based on, *inter alia*, a person's handicap. Baldridge has not pled any facts that would support such a discrimination claim. Baldridge's allegations of defective maintenance pertain to his claim that the Defendants failed to fix the bed bug problem in the apartment complex. There is no nexus between the Defendants' alleged failure to maintain the premises and Baldridge's handicap. Therefore, the Fair Housing Act

cannot serve as a basis for any federal law violations.

To sum, Baldridge's claims of unsanitary and unsafe living conditions and illegal eviction arise under state landlord-tenant law and must be litigated in state courts. Without any federal-law claim supporting Baldridge's suits against the Defendants, his state-law claims do no provide this court this subject-matter jurisdiction.[8] Therefore, the court recommends that Baldridge's state-law claims be dismissed as to both Defendants.

### III. RECOMMENDATION

For the foregoing reasons, this court recommends that Baldridge's Section 1983 claims against Independent Apartments and Tesco be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted and for lack of subject-matter jurisdiction.

Respectfully submitted this 6th day of July, 2016.

                              s/Diane K. Vescovo
                              DIANE K. VESCOVO
                              CHIEF UNITED STATES MAGISTRATE JUDGE

---

[8] The court does not have diversity jurisdiction under 28 U.S.C. § 1332, which states that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." In his complaint, Baldridge states that Baldridge, Independent Apartments, and Tesco are all residents of Tennessee, (Compl. ¶ III, Baldridge v. Independent Apartments, Case No. 2:16-cv-2293-JDT-dkv, ECF No. 1; Compl. ¶ III, Baldridge v. Tesco Properties, Case No. 2:16-cv-2294-JDT-dkv, ECF No. 1.) Therefore, Baldridge has failed to plead complete diversity, and the court does not have diversity jurisdiction over this case.

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.